IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>$144,638.00 IN UNITED STATES CURRENCY,<br><br>Defendant *in rem*. | Case No. 24-cv-00124-DKW-WRP<br><br><br>**ORDER GRANTING THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

In March 2024, the United States of America initiated this proceeding aimed at forfeiting $144,638.00 ("the Currency") seized from the residence of Frank Gonzales (Gonzales) during the January 2023 execution of a search warrant. The United States now moves for summary judgment, arguing that the Currency constitutes "proceeds of drug trafficking" and, thus, is subject to forfeiture under applicable law. In support, the Government presents an unopposed concise statement of facts establishing Gonzales dealing drugs from his residence; the Currency, a scale, and Ziploc bags found in Gonzales' bedroom; and drugs found in a toilet and a car on the property. The Government also relies, in part, on text messages purportedly sent from a cellular telephone belonging to Gonzales and which further describe his drug activities.

For his part, Gonzales claims the Currency was "lawfully earned", representing a "portion of his life savings as well as to meet his financial obligation to his children."   He does not address, however, the Government's concise statement of facts, beyond challenging the Government's reliance on text messages in support of its motion.

Upon review, the unopposed facts reflect that the United States has more than carried its burden of showing by a preponderance of the evidence that the Currency constitutes proceeds of drug trafficking and is, thus, subject to forfeiture. Those facts demonstrate that Gonzales dealt drugs from his bedroom, the Currency and a catalogue of drug paraphernalia were found in the same bedroom, and more drugs were found in or around Gonzales' residence.   In contrast, Gonzales has presented no evidence that the Currency was obtained from a legitimate source, as he claims.   As for the text messages Gonzales disputes, even if ignored, they do not materially alter the evidentiary imbalance.   As a result, for the reasons discussed further below, the motion for summary judgment, Dkt. No. 78, is GRANTED.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."   In

particular, the movant's "initial responsibility" is to inform the district court of the

basis for its motion and to identify those parts of the record "which it believes

demonstrate the absence of a genuine issue of material fact."   *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986).   When the movant bears the burden of proof,

"it must come forward with evidence which would entitle it to a directed verdict if

the evidence went uncontroverted…."   *Houghton v. South*, 965 F.2d 1532, 1536

(9th Cir. 1992).   This means that the movant "must establish beyond controversy

every essential element" of its claim.   *See S. Cal. Gas Co. v. City of Santa Ana*,

336 F.3d 885, 888 (9th Cir. 2003) (quotation omitted).   In assessing a motion for

summary judgment, all facts are construed in the light most favorable to the non-

moving party.   *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

### RELEVANT PROCEDURAL BACKGROUND

On March 15, 2024, the United States filed a Forfeiture Complaint against

the Currency, *i.e.*, $144,638.00 in U.S. currency, pursuant to 21 U.S.C. Section

881(a)(6).   Dkt. No. 1.   Therein, the Government alleged that the Currency was

subject to forfeiture as "moneys" furnished in exchange for a controlled substance,

"proceeds" of such an exchange, and/or "moneys" used to facilitate a violation of

federal law.   More specifically, the Government alleged that the Currency was

seized from Gonzales' bedroom following execution of a search warrant on his residence, along with pounds of methamphetamine, a scale, money counter, Ziploc bags, and a black iPhone.

On September 12, 2024, Gonzales answered the Complaint, alleging that he "lawfully earned and held the $144,638.00 as a portion of his life savings as well as to meet his financial obligation to his children."  Dkt. No. 29 at 1.   Gonzales further alleged that the Currency represented "the entirety of his lawfully earned wages" and did not represent "the result of any illegal activities."  *Id*.

On November 21, 2025, the United States filed the pending motion for summary judgment, seeking forfeiture of the Currency.   Dkt. No. 78.   The United States also filed a concise statement of facts, along with numerous exhibits and declarations, in support of the motion.   Dkt. No. 79.   The Government argues that it is entitled to forfeiture because the facts show, by a preponderance of the evidence, that the Currency constitutes "proceeds of drug trafficking" under Section 881(a)(6).

After the Court initially scheduled the motion for summary judgment for hearing on January 9, 2026, Gonzales' response to the motion was due on or before December 19, 2025.   *See* LR7.2.   On November 28, 2025, Gonzales filed an untitled "Trulincs" email with a Subject line of "Discovery".   Dkt. No. 81.

4

Liberally construed, the email states that Gonzales earned the following income: in 2004, roughly $14,800; in 2005, roughly $12,600; in 2006, roughly $4,500; in 2017, 2018, 2019, and 2020, $28,000 in each year from "Tacos & More Mexican Restaurant"; in 2020, 2021, and 2022, $26,000 in each year as "security for parking lot"; in 2017, $35,000 in "gambling winning"; in 2018, $20,000 in "gambling winning"; in 2019, $9,000 in "gambling winning"; in 2021, $12,000 in "gambling winning"; and, in 2022, $6,000 in "gambling winning". *Id*. at 1-3. Also attached to the email were copies of two checks dated September 28, 2022 in the amounts of $12,809 and $2,178, respectively, with Gonzales as the payee and "The Caregiver Foundation" as the payor. *Id*. at 9-10.

On December 1, 2025, Gonzales filed a "response in opposition to the Government's attempt to introduce text messages recovered from his phone and certain recordings." Dkt. No. 82 at 1. Therein, Gonzales asserts that the Government's purported "motion to introduce text messages" should be denied due to an "outstanding Court order" allegedly denying a "motion in limine seeking to admit text messages recovered from Gonzales's phone and certain recordings." *Id*. at 1, 4.

After an apparent delay in Gonzales receiving a copy of the motion for summary judgment, *see* Dkt. Nos. 83, 86, the Court extended the time for Gonzales

5

to respond to the motion to January 9, 2026, and vacated the hearing on the same date, Dkt. No. 87.   Gonzales did not file a response by the extended deadline. Instead, on January 30, 2026, Gonzales filed an opposition to the motion for summary judgment.   Dkt. No. 91.   Therein, Gonzales contends that the Government's "entire civil forfeiture case relies upon the alleged text messages and the inadmissible declaration of a federal agent."   *Id*. at 5.   He asserts that the text messages have been "previously rejected by this Court" and the Government has "not met its burden to establish that the alleged text messages were actually sent from the phone owned by Mr. Gonzales…."   *Id*. at 5-6.   According to Gonzales, therefore, a genuine dispute of material fact exists, precluding summary judgment.   *Id*. at 6.   Gonzales filed nothing else, such as a concise statement of facts in opposition to the Government's version.

After requesting and receiving time to reply to Gonzales' tardy opposition, Dkt. Nos. 92-93, the Government filed a reply on February 20, 2026, Dkt. No. 94. Therein, the Government argues that the "text messages" are admissible and should be considered.   *Id*. at 6-11.   The Government also asserts that, even if not considered, there is "sufficient" other evidence linking the Currency to drug trafficking.   *Id*. at 11-12.   On March 2, 2026, Gonzales moved to have his

January 30, 2026 opposition considered timely filed, which the Court granted.

Dkt. Nos. 95, 98.   Now, with briefing complete, this Order follows.

## FACTUAL BACKGROUND

As mentioned, Gonzales has not filed a concise statement of facts in

opposition to the United States' concise statement of facts, as required by Local

Rule 56.1(e).   Nonetheless, the Court has independently reviewed the United

States' concise statement to ensure that the facts it contains are supported by

material in the record, as required by Local Rule 56.1(b) and Federal Rule of Civil

Procedure 56(c)(1).   Having done so, the material submitted in connection with

the instant motion for summary judgment reflects the following.

In late December 2022, a confidential source (CS) informed Drug

Enforcement Administration (DEA) Special Agent Michael Lesko (SA Lesko) that

Gonzales was a fentanyl and methamphetamine distributor operating in the area of

Waianae, Oʻahu.   Decl. of Michael Lesko at ¶¶ 1, 6 (Lesko Declaration), Dkt. No.

79-8.   On or about January 26, 2023, the CS conducted a controlled purchase from

Gonzales of 50 grams of fentanyl and a half-pound of methamphetamine for a

combined total of $5,700.   *Id*. at ¶ 7.   This controlled purchase took place in

Gonzales' bedroom at his residence on Kuwale Road in Waianae (Residence).

7

During the controlled purchase, the CS observed a handgun displayed on a table from where Gonzales weighed the above-described drugs. *Id*.

On January 27, 2023, a search warrant was executed at the Residence. *Id*. at ¶ 8. Prior to law-enforcement entry into the Residence, Gonzales "refused to cooperate and barricaded himself within" the Residence for approximately 40 minutes. *Id*.

The execution of the search warrant resulted in the seizure of approximately 1779 grams of methamphetamine, a loaded Glock-style handgun and ammunition, $150,388 in U.S. currency, a black iPhone, a scale, a money counter, a safe, and multiple Ziploc bags. *Id*. at ¶¶ 9-13. The $150,388 in U.S. currency, safe, scale, money counter, and Ziploc bags were found in Gonzales' bedroom, while the black iPhone was found in the living room of the Residence. *Id*.[1] All but roughly a third of a gram of the methamphetamine was found in the trunk of a BMW vehicle parked on the property of the Residence, with the remainder found inside and around a toilet in the Residence. *Id*. at ¶¶ 9, 17. Of the $150,338 in U.S. currency, $15,350 was found in a safe in Gonzales' bedroom, with the remaining $134,988 found in various places in the same room. *Id*. at ¶¶ 10-12. One of

---

[1]The Lesko Declaration does not state where in the Residence the Glock handgun was found; only that it was found in the Residence. *See* Lesko Decl. at ¶¶ 9, 10(i).

those places was in a "Taquitos" box wrapped in cellophane and Christmas paper and "filled with bundles of U.S. currency."  *Id*. at ¶ 10(a).  In addition, it was "determined" that $5,700 of the $150,338 in U.S. currency constituted the "official advanced funds" used during the controlled purchase with Gonzales on January 26, 2023, *id*. at ¶ 13,[2] and which was forfeited pursuant to a criminal forfeiture, *id*., *i.e.*, independent of this civil proceeding.  The remaining $144,638 in U.S. currency is the subject of this civil proceeding, *see id*., and referred to as the Currency herein.

According to Homeland Security Investigations Resident Agent in Charge Ryan Faulkner (RA Faulkner), "[c]ommon tools of the drug trade" include scales, money counters, plastic bags, and guns.  Decl. of Ryan Faulkner at ¶ 6 (Faulkner Declaration), Dkt. No. 79-32.  RA Faulkner also believes that wrapping a box containing cash with cellophane and Christmas paper suggests "bulk cash smuggling", while the amount of methamphetamine found in executing the search warrant was "consistent with distribution as opposed to personal use."  *Id*. at ¶¶ 8-9.

According to SA Lesko, "selfie" pictures of Gonzales, text messages, and information provided by the CS "indicate[d]" that Gonzales was the "primary user"

---

[2]The Lesko Declaration does not identify who made this determination.

of the black iPhone "through January 27, 2023[.]"  Lesko Decl. at ¶ 18.  In

addition, RA Faulkner believes that text messages recovered from the iPhone

consisted of, among other things: "code words" regarding the sale of narcotics;

tracking drugs, including methamphetamine and fentanyl, mailed between

California and Hawai'i; negotiating the "clearing of a debt by purchasing

additional narcotics[]"; and distribution of multiple pounds of methamphetamine.

Faulkner Decl. at ¶¶ 4-5.

Based on the events of January 26-27, 2023, Gonzales was charged with and

convicted of distributing methamphetamine and fentanyl, possessing

methamphetamine with intent to distribute, possessing a firearm in furtherance of a

drug trafficking crime, and being a felon in possession of ammunition.  United

States' Concise Statement of Facts at ¶ 14, Dkt. No. 79.

According to Gonzales, he "[p]robably" last filed a tax return in 2006.

Deposition of Frank Gonzales at 39:4-16 (Gonzales Depo.), Dkt. No. 79-7.  The

records of the State of Hawai'i's Department of Labor and Industrial Relations

(DLIR) indicate Gonzales was "either unemployed or employed by an employer

failing to meet its lawful reporting requirements for the time period from January

1, 2018, to August 1, 2023."  Declaration of Bonnie Moriguchi at ¶ 8, Dkt. No.

79-33.  Gonzales testified that, in September 2022, he received two checks for

$2,178 and $12,809, respectively, with neither check being cashed.   Gonzales Depo. at 14:14-16:20, 18:17-21.   Gonzales further testified that, while he had "winnings" from gambling, his "losses" from gambling "could have been close" to the same amount.   *Id*. at 28:19-30:4.   Gonzales also testified that, between 2020 and his arrest in 2023, he worked in "parking lot security[,]" which earned him between $2,400 and $2,800 every month in cash.   *Id*. at 21:20-24:3.   In addition, Gonzales testified that, between 2017 and 2020, he "worked at Tacos and More", earning about $2,600 a month, which was paid to him via check.   *Id*. at 24:4-25:13.   He did not receive W-2s for either of these jobs.   *Id*. at 25:14-18.

## DISCUSSION

Because the dispute here concerns the civil forfeiture of property, the Court begins with the basic legal framework for such forfeiture, something on which the parties largely appear to agree.   *See* Dkt. No. 78 at 17; Dkt. No. 91 at 3-4.

Pursuant to 18 U.S.C. Section 983(c), to establish that property is subject to forfeiture on the theory that it was used to commit, used to facilitate the commission, and/or involved in the commission of a criminal offense, the Government must prove by a preponderance of the evidence that "there was a substantial connection between the property and the offense."   18 U.S.C. § 983(c)(1), (3).   Further, pursuant to Section 881(a)(6), "all proceeds traceable" to

11

an exchange for a controlled substance are subject to forfeiture. A "preponderance of the evidence" requires "the government show that it is more likely than not that the property is subject to forfeiture." *United States v. Real Prop. in Santa Paula, Cal.*, 763 F. Supp. 2d 1175, 1184 (C.D. Cal. 2011). A "substantial connection" does *not* require the Government to prove a link between property and a specific act of drug trafficking; rather, the Government "may meet its burden with sufficiently strong circumstantial evidence linking the currency to drug trafficking in general." *United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1013 (9th Cir. 2013). Should the Government do so, the burden shifts to a claimant, such as Gonzales, to prove that he is "an innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d)(1); *United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1170 (9th Cir. 2008). "[I]nnocent owner[ship]" means (1) "not know[ing] of the conduct giving rise to forfeiture", or (2) "upon learning of the conduct giving rise to the forfeiture, [doing] all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A); *$493,850.00 in U.S. Currency*, 518 F.3d at 1170.

In light of the foregoing, the initial question here is whether the Government has established, by a preponderance of the evidence, that the Currency has a

12

"substantial connection" to drug trafficking.   Undoubtedly, the Government has

done so.   The many facts presented, to which Gonzales has not properly objected,

show that: (1) in late December 2022, the CS informed SA Lesko that Gonzales

was a fentanyl and methamphetamine distributor; (2) on January 26, 2023, in

Gonzales' bedroom, the CS purchased fentanyl and methamphetamine from

Gonzales for $5,700; (3) the next day, on January 27, 2023, prior to execution of a

search warrant, Gonzales barricaded himself within the Residence for around 40

minutes; (4) execution of the search warrant resulted in the seizure of

approximately 1779 grams of methamphetamine, a loaded Glock-style handgun

and ammunition, $150,388 in U.S. currency, a black iPhone, a scale, a money

counter, a safe, and multiple Ziploc bags; (5) the $150,338 in U.S. currency was

found in various places in Gonzales' bedroom, including in a "Taquitos" box

wrapped in cellophane and Christmas paper; (6) part of this $150,338 in U.S.

currency included the $5,700 used to purchase the drugs from Gonzales on January

26, 2023; (7) "[c]ommon tools of the drug trade" include scales, money counters,

plastic bags, and guns; (8) wrapping the "Taquitos" box in cellophane and

Christmas paper suggested "bulk cash smuggling"; (9) the amount of

methamphetamine found in executing the search warrant was "consistent with

distribution as opposed to personal use[]"; (10) text messages recovered from the

13

black iPhone consisted of "code words" regarding the sale of narcotics, tracking

drugs between California and Hawai'i, negotiating the "clearing of a debt by

purchasing additional narcotics[]", and distribution of multiple pounds of

methamphetamine; and (11) "selfie" pictures of Gonzales, text messages, and

information provided by the CS "indicate[d]" that Gonzales was the "primary user"

of the black iPhone "through January 27, 2023[.]"

These facts present a clear picture: Gonzales distributed drugs, he did so

from at least his bedroom, and he kept therein the paraphernalia and proceeds of

such endeavors, including all of the Currency.   There is nothing more the

Government need show to carry the far from heavy burden of showing that the

Currency *more likely than not* has a "substantial connection" to drug trafficking in

general.   *See $493,850.00 in U.S. Currency*, 518 F.3d at 1170 (concluding that

evidence was sufficient to prove requisite connection where, among other things,

claimant was "observed" during a narcotics investigation, cooperating witnesses

"met" with claimant to discuss drug sales, and cooperating witnesses stated that

claimant "personally" transported drugs and currency).

Gonzales' only challenges to this conclusion are that the "Government's

entire civil forfeiture case relies upon the alleged text messages and the

inadmissible declaration of a federal agent."   Dkt. No. 91 at 5.   Both of these

14

contentions lack merit.   First, contrary to Gonzales' statement, the Government's "entire" case does not depend on the disputed text messages.   As the laundry list of facts above reveals, the Government demonstrates the "substantial connection" it has the obligation to show without reference to the text messages.   In other words, ignoring the messages does *very* little, if anything, to displace the mountain of remaining evidence showing that the Currency was part and parcel of the drug operation Gonzales ran from his bedroom and Residence.[3]   Second, in addition to failing to identify which of the Government's two federal agent declarations he believes is "inadmissible", Gonzales never says why.   His unexplained say-so is not enough.

In summary, the Government has easily satisfied its initial burden of proving that the Currency is subject to forfeiture under Sections 983(c) and 881(a)(6).   As a result, the burden shifts to Gonzales to prove, also by a preponderance of the evidence, his innocent ownership of the Currency.   Gonzales, however, does not even attempt to carry this burden, given that, as discussed, his *only* meaningful

---

[3]In addition, as the Government explains in its reply, Dkt. No. 94 at 9-11, contrary to Gonzales' belief, the text messages were not "rejected" prior to trial by the judge presiding over his criminal case.   Instead, the judge left the decision of whether to admit the messages for trial. *See id*.   And, in that regard, Gonzales cites to nothing in the record to reveal what became of the messages' admission (or lack thereof) at trial.   Thus, there is no reason to ignore the text messages in this proceeding, as Gonzales urges.

15

argument in opposition is that text messages on the black iPhone should be ignored.   Those text messages, though, have *nothing* to do with his alleged innocent ownership of the Currency.   *See 493,850.00 in U.S. Currency*, 518 F.3d at 1170 ("Claimants provided no evidence or argument regarding innocent ownership.").

In addition, although it is beyond the scope of any argument Gonzales makes,   he also provides no evidence of an "alternate theory" for the Currency's origin.   *See id*.   To the extent his testimony and "Trulincs" email, suggesting that he received income from certain jobs and "gambling" in various years preceding January 2023, are intended to carry his burden in this regard, they do not. Notably, even if the Court accepted the unsupported notion that Gonzales received the income he claims—despite the absence of W-2's, Gonzales' failure to file tax returns for the last 20 years, and Gonzales' failure to chronicle expenses and not merely revenue—there is no meaningful evidence in the record that the *Currency* included any part of that income.   *See United States v. $133,420.00 in U.S. Currency*, 672 F.3d 629, 638 (9th Cir. 2012) (explaining that, "in a civil forfeiture action, a claimant's bare assertion of an ownership or possessory interest, in the absence of some other evidence, is not enough to survive a motion for summary

16

judgment.").   As a result, the Court finds that Gonzales has failed to present any evidence that he is an innocent owner of the Currency.

## CONCLUSION

Because there is no genuine dispute of material fact regarding the substantial connection between the Currency and Gonzales' drug trafficking, and there is no evidence of Gonzales' innocent ownership of the Currency, the United States' motion for summary judgment, Dkt. No. 78, is GRANTED, and the Currency, *in toto*, is subject to forfeiture pursuant to 21 U.S.C. Section 881(a)(6).

The Clerk is instructed to enter final judgment in favor of the United States and then close this case.

IT IS SO ORDERED.

DATED: March 23, 2026 at Honolulu, Hawai'i.



Derrick K. Watson
Chief United States District Judge

---

*United States of America vs. $144,638.00 in the United States Currency*;
Civil No. 24-00124 DKW-WRP; **ORDER GRANTING THE UNITED STATES
OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**